
NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>NANCY ANN HOWELL,<br>　　　　　Debtor. | BAP Nos.　CC-20-1172-SGF<br>　　　　　　　CC-20-1218-SGF<br>　　　　(Consolidated Appeals) |
| NANCY ANN HOWELL,<br>　　　　　Appellant,<br>v.<br>LAW OFFICES OF ANDREW S. BISOM;<br>EISENBERG LAW FIRM, APC,<br>　　　　　Appellees. | Bk. No. 6:13-bk-29922-MH<br><br>Adv. No. 6:14-ap-01070-MH<br><br>**MEMORANDUM**<sup>*</sup> |

Appeal from the United States Bankruptcy Court
for the Central District of California
Mark D. Houle, Bankruptcy Judge, Presiding

Before: SPRAKER, GAN, and FARIS, Bankruptcy Judges.

## INTRODUCTION

Chapter 7[1] debtor Nancy Ann Howell appeals from a judgment

under § 523(a)(2)(A) excepting from discharge a state court judgment debt

---

\* This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

1

entered in favor of her former attorneys ("Counsel"), who represented her in litigation involving a homeowners' association and its board members. The California Court of Appeal affirmed the judgment. The bankruptcy court granted Counsel summary judgment based on the preclusive effect of the state court judgment and the jury findings supporting that judgment.

The state court entered judgment for Counsel on both their fraud and breach of contract claims. The state court jury found fraud based on Howell's intentional concealment. At the time she retained Counsel, she failed to disclose her prior litigation with the homeowners' association and the resulting $240,404.71 judgment against her.

On appeal, Howell focuses heavily on a single element of fraudulent concealment. She contends that her duty to disclose the concealed facts was neither actually litigated nor necessarily decided in the state court action because the term "duty to disclose" is not used in either the jury instructions or the jury verdict. Nor was it expressly stated in the state court's judgment. But the judgment unequivocally is based on fraudulent concealment and the California Court of Appeal affirmed the judgment on that basis. Under binding precedent, we presume that California fraud judgments necessarily include a factual determination of all elements required for fraud under California law even if all of those elements were not specifically mentioned in the judgment.

Howell alternately argues that her omissions regarding her prior litigation with the homeowners' association qualify as a statement

2

respecting her financial condition, so they are excepted from the scope of § 523(a)(2)(A) based on the plain language of statute. However, this Panel has held that fraudulent omissions are not "statements" within the meaning of the statute. Thus, her argument lacks merit.

Accordingly, we AFFIRM.

<h1 style="text-align:center">FACTS</h1>

**A.      Counsel's representation of Howell and Counsel's state court lawsuit against Howell.**

Howell retained Counsel in 2006 to represent her, on a contingency-fee basis, in ongoing litigation she commenced against the Oso Valley Greenbelt Association and others ("HOA Defendants"). In the already-pending lawsuit, Howell sought damages from the HOA Defendants based on their alleged conduct leading to her arrest and false imprisonment. After they commenced providing services, Counsel learned the HOA already held a $240,404.71 judgment against Howell. They later found out while they were prosecuting the false imprisonment lawsuit that Howell had settled the litigation and obtained a release of the prior judgment without their knowledge or involvement. Howell never paid Counsel for their services.

In 2007, Counsel sued Howell to recover their fees in the Orange County Superior Court. In their complaint, Counsel sought damages for fraud and breach of contract, among other causes of action. In relevant part, Counsel alleged that Howell intentionally and deceitfully led them to

believe that she desired to prosecute her false imprisonment claim to judgment, when in reality she only wanted them to prosecute the claim as leverage to dissuade the HOA from enforcing the $240,404.71 judgment. More particularly, Counsel alleged that she defrauded them by "knowingly and purposefully fail[ing] to disclose" the prior HOA litigation and the resulting judgment.

In 2008, a jury trial was held in Counsel's action to recover its fees. At the conclusion of testimony, the court read its approved set of jury instructions. This included a jury instruction based on Judicial Council of California Civil Instruction ("CACI") 1901, which deals with the elements for fraudulent concealment. The version of CACI 1901 read to the jury was modified and approved by the attorneys for both parties. It provided:

**1901 Concealment**

The Law Office of Andrew S. Bisom and Day/Eisenberg claim that they were harmed because Nancy Howell concealed certain information. To establish this claim, The Law Office of Andrew S. Bisom and Day/Eisenberg must prove all of the following:

1. That Nancy Howell actively concealed an important fact from The Law Office of Andrew S. Bisom and Day/Eisenberg or prevented them from discovering that fact;

2. That The Law Office of Andrew S. Bisom and Day/Eisenberg did not know of the concealed fact;

3. That Nancy Howell intended to deceive The Law Office of Andrew S. Bisom and Day/Eisenberg by concealing the fact;

4

4. That The Law Office of Andrew S. Bisom and Day/Eisenberg reasonably relied on Nancy Howell's deception;

5. That The Law Office of Andrew S. Bisom and Day/Eisenberg were harmed; and

6. That Nancy Howell's concealment was a substantial factor in causing The Law Office of Andrew S. Bisom and Day/Eisenberg's harm.

Attachment 8 to Howell's Nov. 1, 2019 Request for Judicial Notice in opposition to Counsel's summary judgment motion (brackets omitted).[2]

The jury rendered a verdict finding that Howell had breached its contract with Counsel and had committed fraud. The jury's special verdict included the following fraud-related findings: (1) "Howell intentionally fail[ed] to disclose important fact(s) that plaintiffs . . .did not know and could not reasonably have discovered," (2) "Howell intend[ed] to deceive plaintiffs . . . by concealing the fact(s)," (3) "plaintiffs . . . rel[ied] on . . . Howell's deception" and such reliance was reasonable under the circumstances, (4) Howell's concealment was a "substantial factor" in harming Counsel, and (5) Counsel suffered $48,080.94 in damages resulting from Howell's fraud.

---

[2] Howell's November 1, 2019 request for judicial notice was not included in the parties' excerpts of record. Even so, we exercise our discretion to take judicial notice of the November 1, 2019 request and all other documents filed in Counsel's nondischargeability action and in Howell's bankruptcy cases. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

The jury additionally awarded Counsel another $48,080.94 in contract damages and $144,243.71 in punitive damages, though the state court ultimately struck the punitive damages award. Furthermore, when it entered its final judgment, the state court without explanation halved the amount of Counsel's compensatory damages award. The court's final award granted $24,040.47 to each Counsel, respectively ($24,040.47 to the Law Offices of Andrew S. Bisom and $24,040.47 to Day|Eisenberg). The judgment did not specify any apportionment of the damages between the breach of contract cause of action and the fraud cause of action.

**B.    Howell's first bankruptcy case.**

On October 28, 2008, just before the state court entered its final judgment in favor of Counsel, Howell commenced her first chapter 7 case. As a result, the November 3, 2008 judgment (the "2008 Judgment") was entered while the automatic stay was in effect. The bankruptcy case was dismissed in January 2009 based on her failure to attend the § 341(a) meeting of creditors.

**C.    Howell's second bankruptcy case and Counsel's nondischargeability action.**

**1.    First summary judgment motion and the stay annulment motion.**

In December 2013, Howell filed her second chapter 7 petition. In March 2014, Counsel (Law Offices of Andrew S. Bisom and Day|Eisenberg's successor) commenced the nondischargeability action.

Counsel alleged essentially the same facts they had alleged in their state court fraud cause of action. They asserted that these same facts supported entry of a judgment excepting the judgment debt from discharge under § 523(a)(2)(A) and (a)(6).

Counsel filed their first summary judgment motion in October 2014. They claimed that the preclusive effect of the state court's judgment conclusively determined the nondischargeability of the judgment debt under § 523(a)(2)(A). Howell pointed out that the state court judgment was void because it was entered in violation of the automatic stay in Howell's first bankruptcy case. At the hearing on the first summary judgment motion, the parties and the court discussed at length: (1) the effect of the automatic stay on the 2008 Judgment; (2) the ability of Counsel to address the resulting lack of a final judgment in the state court action; and (3) how those matters affected prosecution of the nondischargeability action. The court then denied the first summary judgment motion without prejudice and set a pretrial conference.[3]

In April 2015, the bankruptcy court in the 2007 bankruptcy case granted Counsel's motions to reopen the case and to annul the stay —

---

[3] Howell argues that the court's comments and thoughts expressed at the December 10, 2014 hearing evidence bias in favor of Counsel. She claims that the court improvidently advised Counsel about how they could negate the legal effect arising from entry of the November 3, 2008 order while the automatic stay was in effect. Having reviewed the hearing transcript in its entirety, we see nothing of the sort. Though Howell characterizes some of the court's comments as legal advice to Counsel, the comments merely reflect the court's thought processes in trying to make sense of the

thereby retroactively validating the 2008 Judgment. Howell then sought relief under Civil Rules 59 and 60 from the case reopening and the stay annulment. After the court orally ruled against her, she twice objected to the form of Counsel's proposed order and twice sought and obtained hearings on her objections. The court entered its order denying her motion for relief in October 2015.

**2.    Second summary judgment motion and Howell's appeals from the stay annulment order and the 2008 Judgment.**

Within days of entry of the order annulling the stay, Counsel filed their second summary judgment motion in the nondischargeability adversary. Meanwhile, Howell filed two separate appeals, one in state court from the 2008 Judgment and the other in federal court from the orders reopening the 2007 bankruptcy case, annulling the stay, and denying her reconsideration motion. These appeals caused the bankruptcy court to continue the second summary judgment motion multiple times. The district court affirmed the bankruptcy court's rulings entered in the 2007 bankruptcy case, and the Ninth Circuit also affirmed. *In re Howell*, Case No. SACV15–1883–CAS, 2016 WL 10679428 (C.D. Cal. Dec. 22, 2016), *aff'd*, 698 F. App'x 470 (9th Cir. 2017).

In August 2019, the California Court of Appeal affirmed the 2008 Judgment. The Court of Appeal construed the entire amount of damages as arising from both Howell's fraud and breach of contract. It held that there

---

arguments presented by both sides at the hearing.

was sufficient evidence to support the entire amount of damages on both fraud and breach of contract grounds.

Howell additionally challenged the fraud ground by arguing that the jury never found she had a duty to disclose and that there was insufficient evidence to support any such finding. The Court of Appeal held that she forfeited the first argument by failing to provide an adequate record on appeal. As for the sufficiency of the evidence, the court rejected Howell's position, holding that there was sufficient evidence in the record to support a finding of a duty to disclose. Ultimately, the Court of Appeal affirmed the judgment in its entirety.

**3.    The decision on the second summary judgment motion.**

By November 2019, the bankruptcy court was poised to rule on Counsel's second summary judgment motion. Howell filed voluminous amended opposition papers, in which she made the following arguments:

- The jury was instructed incorrectly regarding fraudulent concealment because there was no specific statement that the jury must find a duty to disclose.

- Counsel failed to specifically plead or prove in the state court that Howell had a duty to disclose, and the jury did not specifically find that Howell had a duty to disclose.

- When the trial court, without explanation, halved the compensatory damages award from $96,161.88 to $48,080.94, it must have done so to attribute damages solely to breach of contract and none to fraud.

9

- Alternately, the trial court's reduction of the compensatory damages award rendered it impossible to determine what portion of that award, if any, was attributable to Howell's fraud.

- For issue preclusion purposes, fraudulent concealment was neither actually litigated nor necessarily decided in light of the above-referenced problems concerning the duty to disclose issue and the compensatory damages issue.

- Section 523(a)(2)(A) does not apply because the statute specifically excepts from its coverage "statement[s] respecting the debtor's . . . financial condition." And her concealment of the adverse $240,404.71 judgment qualifies as such a statement.

In a reasoned memorandum decision, the bankruptcy court rejected all of Howell's arguments and held that issue preclusion conclusively established Howell's judgment debt to Counsel was nondischargeable under § 523(a)(2)(A). On June 29, 2020, the court entered judgment against Howell on Counsel's § 523(a)(2)(A) claim for relief. Howell timely appealed.[4]

---

[4] On August 17, 2020, the court entered a separate order dismissing Counsel's § 523(a)(6) claim. Howell filed a separate appeal from this order, which has been consolidated with the appeal from the entry of summary judgment, per order of this Panel entered September 11, 2020. Nothing in Howell's appeal brief specifically addresses the dismissal of the § 523(a)(6) claim. Nor would reversal of that ruling provide Howell with any meaningful relief. Consequently, we will not further discuss it. *See Christian Legal Soc'y v. Wu*, 626 F.3d 483, 487–88 (9th Cir. 2010) (declining to address matters not specifically and distinctly argued in the appellant's opening brief).

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Did the bankruptcy court err in granting summary judgment on Counsel's § 523(a)(2)(A) claim based on issue preclusion?

## STANDARD OF REVIEW

We review de novo the bankruptcy court's grant of summary judgment. *Plyam v. Precision Dev., LLC (In re Plyam)*, 530 B.R. 456, 461 (9th Cir. BAP 2015). We also review de novo the bankruptcy court's determination that issue preclusion is available. *Id.*; *Honkanen v. Hopper (In re Honkanen)*, 446 B.R. 373, 378 (9th Cir. BAP 2011). When we review an issue under the de novo standard of review, "we consider [the] matter anew, as if no decision had been rendered previously." *Kashikar v. Turnstile Cap. Mgmt., LLC (In re Kashikar)*, 567 B.R. 160, 164 (9th Cir. BAP 2017).

If we determine that issue preclusion is available, we then review the bankruptcy court's decision to apply it for an abuse of discretion. *Khaligh v. Hadaegh (In re Khaligh)*, 338 B.R. 817, 823 (9th Cir. BAP 2006). A bankruptcy court abuses its discretion if it applies the wrong legal standard or its findings of fact are illogical, implausible or without support in the record. *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011).

11

## DISCUSSION

**A.** **Summary judgment and issue preclusion legal standards.**

A bankruptcy court may grant summary judgment when the pleadings and evidence demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *In re Plyam*, 530 B.R. at 462 (citing Civil Rule 56(a), made applicable in adversary proceedings by Rule 7056).

The issue preclusive effect of a prior state court judgment may serve as the basis for granting summary judgment. *See In re Khaligh*, 338 B.R. at 832*; see also Grogan v. Garner*, 498 U.S. 279, 284 (1991) (holding that issue preclusion applies in nondischargeability actions).

We apply California issue preclusion law to determine the preclusive effect of Counsel's California state court judgment. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005) (stating that federal courts must give full faith and credit to state court judgments and citing 28 U.S.C. § 1738). Under California issue preclusion law, the proponent must establish the following threshold elements:

> (1) the issue sought to be precluded from relitigation is identical to that decided in a former proceeding; (2) the issue was actually litigated in the former proceeding; (3) the issue was necessarily decided in the former proceeding; (4) the decision in the former proceeding is final and on the merits; and (5) the party against whom preclusion is sought was the same as, or in privity with, the party to the former proceeding.

*In re Plyam*, 530 B.R. at 462 (citing *Lucido v. Super. Ct.*, 51 Cal. 3d 335, 341 (1990)).

Before applying issue preclusion, the bankruptcy court also must determine "whether imposition of issue preclusion in the particular setting would be fair and consistent with sound public policy." *In re Khaligh*, 338 B.R. at 824-25 (citing *Lucido*, 51 Cal. 3d at 341-43).

The party asserting issue preclusion has the burden of proof to establish each of the above threshold requirements. *See Harmon v. Kobrin (In re Harmon)*, 250 F.3d 1240, 1245 (9th Cir. 2001). To satisfy this burden, the moving party "must introduce a record sufficient to reveal the controlling facts" and must "pinpoint the exact issues litigated in the prior action." *Kelly v. Okoye (In re Kelly)*, 182 B.R. 255, 258 (9th Cir. BAP 1995), *aff'd*, 100 F.3d 110 (9th Cir.1996). Any reasonable doubt regarding what the prior court decided is resolved against the moving party. *Id*.

## B.     Howell's arguments on appeal.

As a threshold matter, we note that there is no dispute in this appeal that the bankruptcy court articulated and applied the correct legal standards governing issue preclusion. In addition, Howell has conceded that all issues other than duty to disclose and damages were fully and fairly litigated in the state court. She has not advanced any argument — either in the bankruptcy court or on appeal — why any other issues needed to be retried in the bankruptcy court. Thus, even if Howell were to wholly prevail on appeal, the other elements for a cause of action of fraudulent

concealment — nondisclosure, intent to deceive, materiality, and reliance — have been conclusively established for purposes of Counsel's nondischargeability action. *Compare Boschma v. Home Loan Ctr., Inc.*, 198 Cal. App. 4th 230, 248 (2011) (stating California fraudulent concealment elements), *with Oregon v. Mcharo (In re Mcharo)*, 611 B.R. 657, 660-61 (9th Cir. BAP 2020) (identifying elements for finding nondischargeable fraudulent omissions).

**1.   Howell's arguments against the application of issue preclusion.**

On appeal, Howell largely asserts the same arguments she made in the bankruptcy court. Most of these arguments challenge the bankruptcy court's application of issue preclusion and hinge on the same two premises: (1) because the state court jury was not specifically instructed that fraudulent concealment requires a duty to disclose its fraudulent concealment findings were fatally flawed; and (2) the judgment for fraudulent concealment is not entitled to issue preclusive effect because her duty to disclose and the damages arising from her fraudulent conduct were neither actually litigated nor necessarily decided. As explained below, both of these premises are meritless.

**a.   Correctness of fraudulent concealment instruction and findings.**

Concerning the correctness of the fraudulent concealment instruction and jury findings, the state trial court entered a fraudulent concealment

judgment against Howell, and the California Court of Appeal affirmed this judgment. In the process, the Court of Appeal specifically rejected Howell's arguments challenging the fraudulent concealment instruction and findings. We cannot and will not second-guess the Court of Appeal's ruling rejecting her argument that the fraudulent concealment instruction and findings were improper. *See Exxon Mobil Corp.*, 544 U.S. at 283-84; *Lopez v. Emerg. Serv. Restoration, Inc. (In re Lopez)*, 367 B.R. 99, 105-06 (9th Cir. BAP 2007).

Even if we were to inquire into the correctness of the state court's concealment jury instruction, we note that both parties jointly sought and obtained the state trial court's approval of their modified version of CACI 1901 – the fraudulent concealment jury instruction. Moreover, we perceive no error in that instruction. There is no dispute here that, under California law, a duty to disclose could arise from the contractual relationship between Counsel and Howell provided that any one of the following three additional circumstances existed:

> (1) the defendant makes representations but does not disclose facts which materially qualify the facts disclosed, or which render his disclosure likely to mislead; (2) the facts are known or accessible only to defendant, and defendant knows they are not known to or reasonably discoverable by the plaintiff; [or] (3) the defendant actively conceals discovery from the plaintiff.

15

*Warner Constr. Corp. v. City of L.A.*, 2 Cal. 3d 285, 294 (1970) (citations and footnotes omitted); *see also LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997) (same).[5]

Here, the parties' modified CACI 1901 jury instruction — which Howell included in her summary judgment opposition papers — specifically referenced "active concealment" — one of the three recognized circumstances from which a duty to disclose can arise. Howell has not offered any explanation why instructing the jury to look for active concealment was not sufficient to address the duty to disclose issue. Nor are we aware of any such explanation.

### b. Preclusive effect of fraudulent concealment judgment.

Howell contends that there are problems with the 2008 Judgment that prevented the bankruptcy court from giving it any preclusive effect in the nondischargeability action. Specifically, she reiterates her argument that her duty to disclose was not litigated. So, she contends, the issue was not actually litigated or necessarily decided as part of the 2008 Judgment. She also contends that the state court's reduction of the damages suggests that the court awarded no damages to Counsel for fraud. She concludes, therefore, that the 2008 Judgment cannot have any preclusive effect in determining the nondischargeability of that debt. Once again, entry of the 2008 Judgment precludes Howell's arguments.

---

[5] California law recognizes a fourth scenario, not applicable to this appeal, from which a duty to disclose can arise: if the defendant was acting in a fiduciary capacity to

We hold that both the duty to disclose and the damages issues were actually litigated and necessarily decided when judgment was entered on Counsel's fraud claim based on the jury's special verdict. Issues are "actually litigated" when they are properly raised by a party's pleadings, when they are submitted to the court or jury for determination, and when the court or jury actually decides them. *In re Harmon*, 250 F.3d at 1247 (citing *People v. Sims*, 32 Cal. 3d 468 (1982)). When an element is essential to entry of judgment, it necessarily follows that if judgment is rendered the element was actually litigated. *See id.* at 1248–49 (applying California law). Issues are "necessarily decided" so long as they are at least somewhat necessary to the decision. *Samara v. Matar*, 5 Cal. 5th 322, 327 (2018) (citing *Lucido*, 51 Cal. 3d at 342).

Where, as here, a California court enters a judgment based on fraud after a jury or bench trial, we generally do not look behind the judgment to ascertain whether all of the required fraud elements specifically were found. In other words, we presume that the fraud judgment "necessarily included a determination of all of the facts required for actual fraud under California law." *Zuckerman v. Crigler (In re Zuckerman)*, 613 B.R. 707, 718 (9th Cir. BAP 2020) (quoting *Younie v. Gonya (In re Younie)*, 211 B.R. 367, 374 (9th Cir. BAP 1997)).

Howell recognizes that a duty to disclose is a fundamental prerequisite for a fraudulent concealment judgment. *See LiMandri*, 52 Cal.

the plaintiff at the time of the nondisclosure. *See LiMandri*, 52 Cal. App. 4th at 336 & n.3.

17

App. 4th at 336-37. The state court entered judgment for Counsel on their fraud cause of action based on the agreed upon jury instructions and special verdict for fraudulent concealment. Following *Zuckerman* and *Younie*, the state trial court's fraud judgment necessarily decided the duty to disclose and damages issues. Furthermore, following *Harmon*, because these issues were essential to the fraudulent concealment judgment, they also were actually litigated.

With respect to the jury's damages finding, and the trial court's reduction of the jury's damages award, Howell argues the trial court's reduction of the compensatory damages award makes it impossible to tell whether any of the award flowed from her fraud. She claims it is just as likely that the court's adjustment of the jury's damages award was meant to attribute all of the damages to her breach of contract instead of her fraud. Alternately, she insists that the court must have reduced the award to remove any fraud damages because of the problems she perceives with the jury's fraud findings, as discussed above. Howell reasons that, because of the uncertainty regarding the damages award, the damages issue was not necessarily decided for issue preclusion purposes.

Damages, like the duty to disclose, also is an essential element for an action based on fraudulent concealment. *See Boschma*, 198 Cal. App. 4th at 248 (identifying damages as one the elements for fraudulent concealment). Howell's damages argument ignores the presumption flowing from the fraudulent concealment judgment – that the judgment necessarily included

18

a determination of all factual issues required for actual fraud under California law, including damages. *See In re Zuckerman*, 613 B.R. at 718; *In re Younie*, 211 B.R. at 374.

Any possible doubt (which we do not have) that the state trial court entered the $48,080.94 judgment for fraud as well as breach of contract was resolved by the California Court of Appeal's decision. Affirming the trial court's judgment, the Court of Appeals specifically upheld the judgment on fraud grounds. In doing so, it rejected all of Howell's arguments attacking the merits of the fraud ruling. For issue preclusion purposes, the Court of Appeal's affirmance on the ground of fraudulent concealment is controlling. *See, e.g., Delannoy v. Woodlawn Colonial, L.P. (In re Delannoy)*, 615 B.R. 572, 586–87 (9th Cir. BAP 2020); *Newport Beach Country Club, Inc. v. Founding Members of Newport Beach Country Club*, 140 Cal. App. 4th 1120, 1123 (2006).

Howell counters that, under California law, when an appeal is pending from an adverse judgment in the first action, the court in the second action cannot give the judgment on appeal any issue preclusive effect, because the finality requirement is not satisfied. This is an unremarkable statement of California law. *See Sandoval v. Super. Court*, 140 Cal. App. 3d 932, 936–37 (1983). However, Howell attempts to take this argument too far. She posits that, if an appeal from a state court judgment is pending at the time of a bankruptcy filing — or later when a subsequent nondischargeability action is filed — issue preclusion never can be applied

19

in the nondischargeability action, even if the appeal from the state court judgment is disposed of before the nondischargeability action is concluded. She cites no authority for this novel proposition of law. Nor are we aware of any. Indeed, it is contrary to the well-accepted notion that California judgments become sufficiently final for issue preclusion purposes whenever (and however) the appeal rights in the first action are disposed of. *See, e.g., In re Delannoy,* 615 B.R. at 586–87; *Sandoval,* 140 Cal. App. 3d at 936–37; *see also Exxon Mobil Corp.,* 544 U.S. at 293 (stating in the context of parallel, concurrent actions in state and federal court that "Disposition of the federal action, once the state-court adjudication is complete, would be governed by preclusion law.").

Thus, we reject as meritless all of Howell's arguments challenging the preclusive effect of the state court's fraudulent concealment judgment.

## 2. Treatment of Howell's omissions as a statement respecting the debtor's financial condition.

Citing *Lamar, Archer & Cofrin, LLP v. Appling*, ___ U.S. ___, 138 S. Ct. 1752, 1758, (2018), Howell contends that her omissions regarding her involvement in prior litigation with the HOA Defendants — and the judgment they held against her — constituted statements respecting her financial condition. As *Appling* observed, statements respecting the debtor's financial condition are not actionable under § 523(a)(2)(A). *Id.* at 1758. Instead, such statements only are actionable under § 523(a)(2)(B) and,

20

hence, must be in writing in order to fall within the stated scope of the nondischargeability statute. *Id.* at 1758-59.[6]

*Appling* held that the debtor's oral misrepresentation regarding the value of a single asset – his claimed $100,000 expectancy interest in a tax refund – qualified as a statement respecting his financial condition. *Id.* at 1757-58. Consequently, *Appling* concluded that the creditor could not prevail on its § 523(a)(2)(A) claim because the type of misrepresentation at issue was specifically excepted from the scope of the statute. *Id.* at 1764.

Howell's reliance on *Appling* is misplaced. Here, Counsel's § 523(a)(2)(A) claim was not based on an affirmative misstatement of fact, but rather on a fraudulent omission of fact. This Panel has held that *Appling* does not extend to fraudulent omissions. *See In re Mcharo*, 611 B.R. at 661-

---

[6] The relevant part of the nondischargeability statute provides:

(a) A discharge under . . . this title does not discharge an individual debtor from any debt—
\* \* \*
(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
> (A) false pretenses, a false representation, or actual fraud, **other than a statement respecting the debtor's or an insider's financial condition**;
> (B) use of a statement in writing—
>> (i) that is materially false;
>> (ii) **respecting the debtor's or an insider's financial condition**;
>> (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
>> (iv) that the debtor caused to be made or published with intent to deceive[]

11 U.S.C. § 523 (emphasis added).

62. In *Mcharo*, we explained that the plain language of the statute refers to "a **statement** respecting the debtor's . . . financial condition" and a fraudulent omission is not a "statement." *Id.* at 662 (emphasis added). Accordingly, we reject Howell's argument based on *Appling*.

### 3. Howell's other grievances do not justify reversal.

Howell references numerous procedural decisions the bankruptcy court made during the course of the nondischargeability action (for example, the granting of continuances), which she claims were unfair to her or evidence the court's bias. But she never specifically and distinctly argues or explains how these decisions constituted reversible error. Nor is any reversible error evident to us. Accordingly, we decline to address them further. *See Christian Legal Soc'y*, 626 F.3d at 487–88.

Similarly, Howell states, in passing, that the bankruptcy court erred by not granting her motion to dismiss Counsel's nondischargeability complaint. To support this assertion, she merely states without legal support that Counsel's § 523(a)(2)(A) claim for relief failed to specifically allege that she had a duty to disclose. However, neither Civil Rule 8(a) nor Civil Rule 9 (made applicable in adversary proceedings by Rules 7008 and 7009) required Counsel to include the specific words "duty to disclose."

Civil Rule 8(a) merely requires the complaint's allegations to include a short and plain statement of the grounds for relief. This pleading standard is relatively minimal and is satisfied when the complaint contains "sufficient allegations to put defendants fairly on notice of the claims

against them." *Tevis v. Hoseit (In re Tevis)*, BAP No. EC–10–1320–JuKiD, 2011 WL 7145712, at *8 (9th Cir. BAP Dec. 9, 2011) (quoting *McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991)).

In turn, Civil Rule 9(b) requires plaintiffs to plead fraud claims for relief with greater particularity. This requirement has been construed to mean: "the complaint must (1) specify the averred fraudulent representations; (2) aver the representations were false when made; (3) identify the speaker; (4) state when and where the statements were made; and (5) state the manner in which the representations were false and misleading." *Id.* at *9 (citing *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991)).

Neither of these standards required the nondischargeability complaint to specifically use the term "duty to disclose." More to the point, the notion that Howell was not sufficiently apprised of the grounds for Counsel's nondischargeability complaint is ludicrous. The adversary complaint referenced Counsel's state court judgment against Howell and made clear that Counsel's exception to discharge claims were premised on the same transaction and omissions from which the state court judgment arose. Counsel further alleged that Howell knowingly failed to disclose the prior judgment and settlement negotiations while reassuring them of her intent to proceed with the claims against the HOA Defendants. Under these circumstances, we reject Howell's argument that Counsel insufficiently pleaded fraud in their nondischargeability complaint.

23

Finally, Howell points out that the Eisenberg Law Firm, APC was not a party to the state court judgment and argues that it lacks standing. But she has not disputed that the Eisenberg Law Firm received an assignment of rights under the judgment from Day|Eisenberg, which was a named party to state court judgment. Instead, Howell argues that the assignment was invalid.

Howell believes that Eisenberg Law Firm could not acquire any rights in the judgment while the judgment was void as in violation of the automatic stay arising from her 2008 bankruptcy case. But Howell is mistaken. She ignores the fact that Counsel obtained an annulment of the stay to **retroactively** validate the state court judgment. *See Fjeldsted v. Lien (In re Fjeldsted)*, 293 B.R. 12, 21 (9th Cir. BAP 2003) (stating that court order annulling stay retroactively validated foreclosure sale that otherwise would have been void as a stay violation). Because the judgment was retroactively validated, nothing prevented Day|Eisenberg from assigning its interest in the state court judgment to the Eisenberg Law Firm. Thus, we reject Howell's standing argument.[7]

---

[7] To the extent Howell claims that the assignment is invalid on other grounds, Howell lacks standing to challenge the validity of an assignment to which she is not a party. *See Yvanova v. New Century Mortg. Corp.*, 62 Cal. 4th 919, 936 (2016) ("When an assignment is merely voidable, the power to ratify or avoid the transaction lies solely with the parties to the assignment; the transaction is not void unless and until one of the parties takes steps to make it so.").

**CONCLUSION**

Based on the foregoing, we AFFIRM the bankruptcy court's summary judgment excepting the judgment debt from discharge under § 523(a)(2)(A).